# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
July 17, 2007 Session

## STATE OF TENNESSEE v. KEVIN E. GLASGOW

**Appeal from the Circuit Court for Stewart County**
**No. 4-1618-CR-05     George Sexton, Judge**

---

**No. M2006-02081-CCA-R3-CD - Filed January 23, 2008**

---

The defendant, Kevin E. Glasgow, was convicted of driving under the influence (DUI), fourth offense, a class E felony, and received a sentence of one year, suspended after 150 days. He was acquitted of driving on a revoked license. On appeal, the defendant argues that the evidence is not sufficient to support his conviction and that the jury rendered an inconsistent verdict by finding him guilty of DUI and not guilty of driving on a revoked license. We conclude that no error exists, and we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Gregory D. Smith, Clarksville, Tennessee (on appeal), and Anthony L. Clark, Paris, Tennessee (at trial), for the appellant, Kevin E. Glasgow.

Robert E. Cooper, Jr., Attorney General and Reporter; Elizabeth B. Marney, Senior Counsel; Dan Mitchum Alsobrooks, District Attorney General; and Carey J. Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to a one-car accident involving the defendant's vehicle. The defendant was charged with two counts of DUI, fourth offense–one count based on his being intoxicated and one count based on his having a concentration of alcohol in his blood or breath of .08% or more–and one count of driving on a revoked license. Van Herndon testified that he was formerly a deputy with the Stewart County Sheriff's Department and that he was on duty on January 26, 2004, when he responded to a call about an accident. He said that a call was made at 2:27 a.m. and that he arrived at the scene at 2:35 a.m. He said he saw the defendant on the ground next to an overturned sport utility vehicle (SUV). He said there was also a male bystander there, although he could not recall the man's name. He said the defendant complained of back and neck pain and had blood around his

face.  The defendant told him the defendant was involved in the accident and was worried about a female who was with him in the vehicle but whom he could not find.  Herndon said that he looked in the car for this female but that he could not find her and did not see any indication of a female passenger in the car.  He said that later, the defendant told him that the female was driving the car.  He asked the defendant how he could find this person, but the defendant offered "no usable information" regarding her whereabouts.  He said the defendant was lucid.

Herndon said that because he was the only sheriff's deputy on duty at the time, he called the Tennessee Highway Patrol to conduct the investigation.  He said Trooper Kenneth Harrison arrived on the scene about forty-five minutes later.  Before Trooper Harrison arrived, the defendant was taken by paramedics to the hospital.  Herndon said that he did not make a police report and did not remember exactly what the defendant told him but that the "gist" of what the defendant said was that the defendant and a friend were out socializing, stopped to buy some beer, and wrecked the vehicle on the way to another location.  Herndon said he did not receive information from another person that he or she was driving the vehicle.

On cross-examination, Herndon testified that he may have made notes regarding the accident and what the defendant told him but that he did not know where any such notes were.  He recalled that the vehicle involved in the accident was a mid-sized SUV, but he said he could be mistaken about that.  He acknowledged that the defendant never admitted to driving the vehicle at the time of the accident and said someone else was driving it.  He said that in determining whether there was a female in the vehicle he looked for such things as a purse and compact.

Trooper Kenneth Harrison testified that he was called to the scene of an accident early on January 26, 2004.  He said the accident involved a white Ford Escort.  He said the Escort was traveling west on Highway 233 when it ran off the left shoulder of the road at a curve.  He said the car ended up twenty-five feet down a ravine.  When he arrived at the scene, the defendant was not there, and Herndon informed him that the defendant had been taken to the hospital.  Trooper Harrison testified that he was certified in accident reconstruction.  He said that he investigated the scene of the wrecked Escort and saw no evidence that another vehicle was involved.  He said there was no physical evidence of what caused the car to run off the road.  He said he saw beer containers outside the car, some full and some empty.  He said he saw no evidence of a woman's presence.  He said the defendant owned the car.  He said there was no one at the scene who claimed to be the driver of the car and that he did not get information from anyone who witnessed the accident.  The parties stipulated that the defendant's license was revoked at the time of the accident.

Trooper Harrison testified that he went to the hospital around 5:00 a.m. to question the defendant.  He said the defendant appeared to understand what was happening.  The defendant told him that the defendant was riding in the car with his girlfriend, that they had gone to a club that night, and that the girlfriend was driving when the car ran off the road.  He said the defendant admitted to drinking eight or nine beers that evening.  The defendant refused to tell him the girlfriend's name or how Trooper Harrison could contact her.  He said the first time he heard the name "Wyatt" was the day of a court hearing in 2005 related to the defendant's case.  An attorney

for the defendant told Trooper Harrison that Ms. Wyatt was driving the car when it crashed, but the attorney did not offer any information on how to contact Ms. Wyatt. He said this was about a year after the accident occurred.

Trooper Harrison testified that the defendant appeared to be intoxicated when he questioned him at the hospital the morning of the accident. The defendant consented to have his blood drawn for a blood alcohol test, and the defendant's blood alcohol content was determined to be .15%.

On cross-examination, Trooper Harrison testified that he did not have notes reflecting what Herndon told him when he arrived at the scene. He remembered that Herndon told him there was a bystander who came upon the crash but did not witness it. He acknowledged that his police report indicated that the Escort was owned by Brian Davis. Trooper Harrison testified that although the car was registered in Mr. Davis' name, the defendant told him the defendant had purchased the car but had not registered it in his name yet. Trooper Harrison said he looked for physical evidence that another person was in the car with the defendant, including blood, but did not find any. He acknowledged that since finding out Ms. Wyatt's name over a year before the trial, he made no effort to find her. He said he did not seek out Ms. Wyatt because he did not learn of her until a year had passed since the accident, he was no longer investigating it, and he was suspicious of the claim that she was driving the car. He said that two 9-1-1 calls were made to the Stewart County dispatch, one from the Houston County Sheriff's Department and another from an individual. He acknowledged that he did not try to find out that individual's name.

Trooper Harrison testified that the defendant appeared to be intoxicated, even though he also was able to understand the implied consent form that Trooper Harrison read to him and had him sign. He said he was unable to give the defendant a field sobriety test due to the defendant's injuries and his being in the hospital. He agreed that no witnesses saw the defendant or anyone else driving the car when it crashed.

After a recess, Trooper Harrison testified in rebuttal that he contacted the Stewart County dispatcher during the recess. He discovered that the individual who made the 9-1-1 call about the defendant's accident did not leave his name. The dispatcher only knew that it was a male calling from a cellular telephone.

Tonya Michelle Wyatt testified that the defendant was her fiancé and that they had two children together. She said that she was driving the defendant's car at the time of the accident on January 26, 2004. She said that on that day, she and the defendant were not in a relationship, but that they had met that evening to talk about "working things out." She said they had previously been in a relationship and had a son at that time. She said that she was living with another man at the time, that her boyfriend left for work around 5:30 p.m., and that she met the defendant at the defendant's brother's house at around 6:00 p.m. She and the defendant later left to drive around and talk. She said that she drove but that she drove the defendant's car because it had tinted windows, and they were worried about people seeing them and Ms. Wyatt's boyfriend finding out they were together. She said she drove on "back roads" because the defendant's car was a "standard shift," which she

-3-

was not accustomed to driving. She said they drove to a gas station, where the defendant bought beer for himself and water for Ms. Wyatt. She said they continued driving around on back roads and that at around midnight, she told the defendant she should go back to her car because she had work early the next morning. Soon thereafter, she attempted to stop the car as she approached a stop sign but was unable to do so. She said that she pumped on the brake several times but that the car did not stop. She said the defendant later told her that he grabbed the steering wheel, although she could not remember it happening. She did remember that the car turned off the road toward the woods and fell into a ditch.

Ms. Wyatt testified that she and the defendant had to crawl out of the car through the hatch. She said she was very upset and that the defendant's face was covered in blood. She said that she was worried that someone would find her and the defendant together and that the defendant told her to walk back to her car. She said she walked one or two miles back to the defendant's brother's house, where her car was. She did not know how long the walk took her but said she remembered at least three cars passing her on the road. However, she said that when a car passed, she would get off the road and that it would be difficult for someone driving on the road to see her. She got her car, returned home, and eventually went to bed. She could not remember what time everything happened, but she said it was about 3:30 a.m. by the time she went to bed. She said she had to be at work at the hospital by 5:30 a.m.

Ms. Wyatt testified that she accompanied the defendant to all his scheduled court appearances and that she was in court about four or five times before the day of trial. She said she made it known to the defendant's attorney that she was the one driving the defendant's car at the time of the accident and that she was willing to talk to anyone about that fact.

On cross-examination, Ms. Wyatt testified that she thought the accident occurred about midnight or 1:00 a.m., and she did not think it was as late as 2:21 a.m., when the first call to 9-1-1 was received. She acknowledged that she was at the hospital in the morning working at the same time that the defendant and Trooper Harrison were also there. She knew she could have told someone at that time that she was driving the car, but she said she was worried about her boyfriend finding out that she was with the defendant. She was afraid that her boyfriend would throw her and her then-three-year old son out of his house. She said she did not find out until she talked to the defendant later that day that he was charged with DUI. The defendant told her not to talk to authorities about being the driver until they talked to an attorney. She said the attorney told her that she did not have to testify until the trial. She said the attorney also told her that the District Attorney did not want to talk to her.

The defendant testified that on the night before the accident, he and Ms. Wyatt left the defendant's brother's house at around 7:00 p.m. He said Ms. Wyatt drove them on "back country roads" in his Ford Escort. He said they took his car because it had tinted windows. He said that while they were together, they "rode around," talked, and parked the car. He said he had been drinking that night. He said they were headed back to his brother's house when the car "blew out in the main road." He said that he panicked, that he grabbed the steering wheel and turned it left,

and that the car went down the road sideways and headed into a ditch.  He said the car ended up on its side in the ditch.  His face was cut by glass from the passenger's side window.

He testified that after he and Ms. Wyatt got out of the car, he told Ms. Wyatt to go back to her car because he did not want anyone to see them together.  He said Ms. Wyatt then left the scene.  He said a person stopped to ask if he needed help and offered him use of a cellular telephone.  He said this person also asked the defendant if a woman was with him.  This person also called the authorities, after which some officers arrived on the scene.  The defendant said he told the officers that a woman had been with him and was driving the car.  He said the officers asked him questions about the accident.  He said he remembered talking to officers but did not remember talking to Mr. Herndon.

The defendant testified that he first talked to Trooper Harrison in the emergency room at the hospital.  Trooper Harrison asked the defendant to give a blood sample for a blood alcohol test, and the defendant "had to sign some stuff."  He said that he told Harrison he had been drinking and that he had about eight or nine beers that night.  He said that he told Harrison a woman had been driving the car and that Harrison told him to bring the woman to court with him when he was scheduled to appear. The defendant testified that Ms. Wyatt drove him to court every time he had to make a scheduled appearance.

On cross-examination, the defendant testified that Ms. Wyatt had wanted to tell authorities the day after the accident that she was driving the car but that he told her to wait.  He said he did not try to call Trooper Harrison to connect him with Ms. Wyatt because he followed Harrison's suggestion to bring Ms. Wyatt to court.  He said he did not know when the accident happened or the time he arrived at the hospital.  He also did not know the name of the road where the accident occurred.  He said that he grabbed the steering wheel instinctively and that he could not control the car from the passenger's side.  He said he had been drinking but that Ms. Wyatt had not.  He said that even though he was under the influence of alcohol, he understood what was going on and followed Trooper Harrison's requests.  He said he knew Ms. Wyatt was working at the hospital at the same time he and Trooper Harrison were there, but he said he would not have bothered her at her place of employment.

Based on this evidence, the jury found the defendant guilty of both counts of DUI and not guilty of driving on a revoked license.  The trial court merged the DUI convictions and sentenced the defendant to one year, suspended to probation after service of 150 days.

## I.  SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence presented at trial is not sufficient to support his conviction for DUI.  In particular, he argues that the evidence did not show that he was driving or in control of a vehicle.  The state counters that the evidence was sufficient to conclude that the defendant was driving while under the influence of alcohol.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence; rather, we presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. <u>See</u> <u>State v. Sheffield</u>, 676 S.W.2d 542, 547 (Tenn. 1984); <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. <u>See</u> <u>State v. Bland</u>, 958 S.W.2d 651, 659 (Tenn. 1997).

The defendant was convicted under Tennessee Code Annotated section 55-10-401, which states:

> (a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:
>
> (1) Under the influence of any intoxicant . . . ; or
>
> (2) The alcohol concentration in such person's blood or breath is eight hundredth of one percent (.08 %) or more.

The defendant does not challenge that he was intoxicated or that his blood-alcohol concentration was above .08%. The only element of the offense that he challenges is that he drove or was in physical control of an automobile at the relevant time. He argues that because there was no evidence to contradict his and Ms. Wyatt's testimony that Ms. Wyatt was driving the car, the conviction cannot be supported. We conclude that the evidence is sufficient.

Van Herndon testified that when he arrived at the scene within minutes of a 9-1-1 call reporting the accident, he saw only the defendant. Both Herndon and Trooper Harrison testified that they did not see any indication that another person was in the car with the defendant at the time of the accident. Nor did anyone report seeing a person walking away from the accident scene near the time of the accident, even though Ms. Wyatt testified that she had to walk one to two miles back to her own car. Trooper Harrison testified that Ms. Wyatt did not come forward as the driver of the car until about a year after the accident and that he thought the timing was suspect. The jury heard the conflicting evidence and had the opportunity to consider the defense that Ms. Wyatt was actually the one driving the car. It was within the province of the jury to weigh conflicting evidence and determine the credibility of witnesses, and we will not second-guess the factual determinations of the jury. The evidence is sufficient.

The defendant also argues that because the evidence did not prove that he was actually driving the car, the state's case must rely on his being in "physical control" of the car when he, according to his and Ms. Wyatt's testimony, grabbed the steering wheel after the car lost control. He argues that the evidence was not sufficient to establish that he was in "physical control" of the car. Although we have concluded that the evidence is sufficient to prove that he was driving the car, even if the evidence showed that he grabbed the steering wheel from the passenger's seat, it would still be sufficient to support his DUI conviction. According to the defendant's testimony, the car was his, he had been drinking, he was sitting next to the driver, and he grabbed and turned the steering wheel while the car was in motion. These factors support finding the defendant in "physical control" of the car and guilty of DUI. See State v. Lawrence, 849 S.W.761, 765 (Tenn. 1993) (adopting a "totality of the circumstances approach in assessing the accused's physical control of an automobile for purposes of T.C.A. § 55-10-401(a)," which circumstances include "the location of the defendant in relation to the vehicle, the whereabouts of the ignition key, whether the motor was running, the defendant's ability, but for his intoxication, to direct the use or non-use of the vehicle, or the extent to which the vehicle itself is capable of being operated or moved under its own power or otherwise").

## II.  INCONSISTENT VERDICTS

The defendant contends that the jury's verdicts, convicting him of DUI but acquitting him of driving on a revoked license, were inconsistent. He argues that because the parties stipulated that the defendant's license was revoked at the time, the only factual determination the jury needed to make regarding his driving on a revoked license was whether he actually was driving at the relevant time. See T.C.A. § 55-50-504 (defining the offense of driving on a revoked license). He further argues that the jury's acquittal on this charge reflects that it did not find that he was driving, and therefore, this verdict is inconsistent with the conviction for DUI. The state responds that the judgment against the defendant is not flawed because our courts do not require consistency of verdicts on different counts. We agree with the state.

Our supreme court has explained,

> Consistency in verdicts for multiple count indictments is unnecessary as each count is a separate indictment. Therein lies the essential reasoning. An acquittal on one count cannot be considered res judicata to another count even though both counts stem from the same criminal transaction. This Court will not upset a seemingly inconsistent verdict by speculating as to the jury's reasoning if we are satisfied that the evidence establishes guilt of the offense upon which the conviction was returned.

Wiggins v. State, 498 S.W.2d 92, 93-94 (Tenn. 1973).  In the present case, we have held that the evidence is sufficient to support the defendant's conviction for DUI, which is all that is needed to sustain the conviction.

Based on the foregoing, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE